LAGESEN, P. J.
*619 The question presented by this post-conviction appeal is whether petitioner's claim that a juvenile court "must find that [a] youth possesses sufficient adult-like intellectual, social and emotional capabilities to have an adult-like understanding of the significance of his or her conduct, including its wrongfulness and its consequences for the *507 youth, the victim and others" in order to waive a youth into adult court under ORS 419C.349, as required under State v. J. C. N.-V. , 359 Or. 559, 597, 380 P.3d 248 (2016), is one that he reasonably could have raised in his earlier post-conviction proceeding initiated in 2009. Petitioner, who is representing himself in this proceeding, contends that a claim that the juvenile court erroneously failed to apply the waiver standard articulated in J. C. N.-V. could not reasonably have been raised until the Supreme Court decided J. C. N.-V. in 2016, and, therefore, he should be permitted to go forward with that claim in this successive post-conviction proceeding under the escape clause of ORS 138.550(3). The post-conviction court concluded otherwise and dismissed the petition.
To obtain a fuller perspective on the question presented, we requested amicus briefing from O'Connor Weber LLC, a law firm with considerable expertise in Oregon post-conviction law, and from Youth, Rights & Justice, an organization with considerable expertise in Oregon juvenile law. They joined forces and submitted a thoughtful amicus brief, for which we are appreciative. Petitioner and the superintendent then submitted additional responsive briefing, for which we are grateful as well.
Having considered the briefing by all parties, we conclude, for the reasons that follow, that petitioner has not put forth sufficient facts to demonstrate that his J. C. N.-V. claim could not reasonably have been raised in his original post-conviction petition. We therefore affirm the judgment of the post-conviction court dismissing the petition.
FACTUAL AND LEGAL BACKGROUND
Although this case was resolved on a motion to dismiss filed by defendant, the superintendent of the Snake River Correctional Institution, both parties submitted *620 evidentiary exhibits to the post-conviction court in connection with the motion, and the superintendent noted to the court that it had "discretion to convert this motion to dismiss to a motion for summary judgment under ORCP 47 C to the extent that the motion is accompanied by exhibits pertaining to matters outside the pleadings." Because the post-conviction court indicated that it considered all the materials submitted by the parties, we conclude that it is appropriate to view the court's ruling as a summary judgment ruling and review it under that standard of review. Consistent with that standard, stated below, we state the facts in the light most favorable to petitioner, the nonmoving party.
In 2005, at the age of 14, petitioner was involved in a home invasion during which he shot and killed two people. Assisted by counsel, petitioner entered a plea agreement, under which he stipulated to waiver into adult court and then pleaded guilty to four counts of aggravated murder. Accepting the stipulated waiver to adult court, the juvenile court found, as it was required to do under ORS 419C.349(3),[1] that "youth at the time of the offense was of sufficient sophistication and maturity to appreciate the nature and quality of the conduct involved." In making that determination, the court relied on a "waiver study" completed by the Marion County Juvenile Department, which included an individual assessment of petitioner. Identifying its methodology, the study explained that it adhered to the criteria approved in Kent v. United States , 383 U.S. 541, 86 S. Ct. 1045, 16 L.Ed. 2d 84 (1966) :
"In considering waiver, this study follows the criteria developed by the Judge of the Juvenile Court of the District of Columbia in connection with the Judges of the U.S. Court and the U.S. Attorney and representatives of the Bar which was published as an appendix to the Kent decision [and] ORS 419C.349."
As the Supreme Court explained in J. C. N.-V. , in Kent , the United States Supreme Court "appended to its decision a set *621 of criteria that juvenile courts in the District of Columbia had used in deciding waiver issues, hinting that due process would be served if juvenile courts based their waiver decisions on such criteria." *508 J. C. N.-V. , 359 Or. at 582, 380 P.3d 248. Our legislature drew the finding required by ORS 419C.349(3) from the Kent criteria, making it "logical to understand [that provision] as requiring an inquiry into the extent to which a juvenile's mental, social and emotional developmental capabilities indicate adult-like capabilities indicative of blameworthiness." Id . at 584, 380 P.3d 248.
After his convictions became final in 2007-following an attempted appeal[2] -petitioner filed a petition for post-conviction relief in early 2009. In that petition, petitioner alleged claims of inadequate and ineffective assistance of both trial and appellate counsel. Although one ground for relief alleged that trial counsel "erroneously advised petitioner to stipulate to *** a remand hearing to adult court and forgo the protections of a juvenile waiver hearing under ORS 419C.352," petitioner did not allege that the juvenile court had applied the wrong legal standard in accepting his stipulated waiver to adult court. In December 2011, the post-conviction court granted the petition in part, ordering a modification of petitioner's sentence, but otherwise denied post-conviction relief.
On May 26, 2016, the Supreme Court decided J. C. N.-V. , 359 Or. 559, 380 P.3d 248. Thereafter, petitioner filed the instant petition. He alleges that, in view of J. C. N.-V. , the juvenile court's acceptance of his stipulated waiver violated Article I, section 20, of the Oregon Constitution and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.[3] The post-conviction court dismissed the petition on the superintendent's motion, concluding that the new petition was both untimely and successive. In so doing, the court rejected petitioner's contention *622 that he was entitled to the benefit of the "escape clauses" of ORS 138.510(3)[4] and ORS 138.550(3),[5] which allow for the filing of an untimely or successive petition asserting grounds that "could not reasonably have been raised" in a timely filed initial petition.
On appeal, petitioner does not dispute that the petition is both untimely and successive. Instead, he contends that his asserted grounds for relief could not reasonably have been raised within the two-year limitations period for seeking post-conviction relief once his convictions were final, and also could not reasonably have been raised in his first post-conviction proceeding, entitling him to the benefit of the statutory escape clauses. Pointing to the fact that the Supreme Court's decision in J. C. N.-V. supplies the foundation for his claims, petitioner argues that he could not reasonably have raised them until 2016, after the Supreme Court issued its decision in J. C. N.-V . Petitioner's central thesis is that J. C. N.-V. so changed the law regarding waivers to adult court under ORS 419C.349 that he could not reasonably have raised his challenge to the juvenile court's acceptance of his stipulated waiver until after the decision was issued, and thus could not have raised his claim in his first post-conviction proceeding.
In response, the superintendent, relying on our decision in Hardin v. Popoff , 279 Or. App. 290, 304, 379 P.3d 593, rev. den. , 360 Or. 465, 384 P.3d 151 (2016), asserts that the decision in J. C. N.-V. did not alter the law in a way that was "novel, unprecedented, or surprising" and, therefore, cannot serve as a *509 basis for invoking the escape clauses. In the superintendent's view, the legal principles stated in *623 J. C. N.-V. are ones, as a general matter, that petitioner reasonably could have anticipated and raised in a timely filed post-conviction petition. The superintendent argues that J. C. N.-V. turned on a straightforward application of Oregon's statutory construction principles-an examination of text, context, and legislative history-all of which would have been available to petitioner at the time of his original petition for post-conviction relief. In essence, because the principles that drove the decision in J. C. N.-V. are ones that were, in theory, available to be argued at the time of petitioner's original post-conviction proceeding, a claim that the juvenile court erred by not applying those principles reasonably could have been raised before the decision in J. C. N.-V. as a matter of law and, thus, are ones that reasonably could have been raised in timely filed post-conviction petitions even before the Supreme Court's decision in 2016. The superintendent also points out that petitioner was litigating his first post-conviction proceeding at the same time that the youth in J. C. N.-V. was litigating the proper interpretation of the waiver standard in the juvenile court and then in the Court of Appeals.
Amici urge a less categorical approach. They argue that "whether a claim 'reasonably could have been raised' in a timely or earlier petition depends on the circumstances of each case." In support of that proposition, they point to the Supreme Court's decision in Verduzco v. State of Oregon , 357 Or. 553, 566, 355 P.3d 902 (2015), which explained that the pertinent inquiry under the statutory escape clauses is not whether "a petitioner conceivably could have raised the grounds for relief in an earlier petition. Rather, the question is whether the petitioner reasonably could have raised those grounds for relief earlier, a question that calls for a judgment about what was 'reasonable' under the circumstances." Id . Amici then contend that, in view of the particular circumstances that confronted petitioner, we should conclude that he could not reasonably have raised his contentions regarding the proper waiver standard in his initial post-conviction proceeding.[6]
*624 STANDARD OF REVIEW
As noted, we understand the post-conviction court to have treated the superintendent's motion as one for summary judgment, in light of the fact that the parties submitted evidence in connection with the motion, which the court considered. We review the trial court's grant of summary judgment to determine whether there is no genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C. That standard is met when, "viewing the evidence in the record and all reasonable inferences that may be drawn from it in favor of the nonmoving party, no reasonable factfinder could return a verdict for the nonmoving party." Chapman v. Mayfield , 358 Or. 196, 204, 361 P.3d 566 (2015).
ANALYSIS
As amici correctly observe, under Verduzco , "the question whether a claim reasonably could have been raised earlier will vary with the facts and circumstances of each claim." Verduzco , 357 Or. at 571, 355 P.3d 902. Adopting our court's formulation of the inquiry in Long v. Armenakis , 166 Or. App. 94, 101, 999 P.2d 461 (2000), the Supreme Court explained:
" 'The touchstone is not whether a particular question is settled , but whether it reasonably is to be anticipated so that it can be raised and settled accordingly. The more settled and familiar a constitutional or other principle on which a claim is based, the more likely the claim reasonably *510 should have been anticipated and raised. Conversely, if the constitutional principle is a new one, or if its extension to a particular statute, circumstance, or setting is novel, unprecedented, or surprising, then the more likely the conclusion that the claim reasonably could not have been raised.' "
Verduzco , 357 Or. at 571, 355 P.3d 902 (quoting Long , 166 Or. App. at 101, 999 P.2d 461 (emphases in Long )).
*625 Applying that standard in Verduzco , the court concluded that the petitioner in that case had not demonstrated that his claim regarding the adequacy of his counsel's advice about the immigration consequences of his guilty plea under the Sixth Amendment to the United States Constitution, as interpreted in Padilla v. Kentucky , 559 U.S. 356, 130 S. Ct. 1473, 176 L.Ed. 2d 284 (2010), was one that could not reasonably have been raised in an initial post-conviction proceeding where the petitioner had, in fact, asserted an analogous claim in his original post-conviction proceeding, even before Padilla was decided. Verduzco , 357 Or. at 572, 355 P.3d 902. In addition, the court also noted that the proceedings in Verduzco were contemporaneous with those in Padilla , another fact indicating that a Padilla -type claim reasonably could have been raised in the petitioner's first post-conviction proceeding. Id. at 557-59, 355 P.3d 902.
By contrast, in Chavez v. State of Oregon , 364 Or. 654, 438 P.3d 381 (2019), the Supreme Court concluded that the petitioner in that case could not reasonably have raised a Padilla claim in a timely filed original petition for post-conviction relief. Distinguishing Verduzco , the court noted that the petitioner in Chavez did not, in fact, raise a Padilla -type claim in a timely filed initial petition for post-conviction relief. Id. at 663, 438 P.3d 381. Further, the petitioner in Chavez would have had to have raised a Padilla -type claim five years before the petitioners in Verduzco and Padilla , at a time when the law almost universally deemed such a claim not cognizable, to present it in a timely filed original petition. Id.
This case, in our view, is more in line with Verduzco than Chavez . The Supreme Court's conclusion in J. C. N.-V. that ORS 419C.349(3) required a juvenile court to "find that the youth possesses sufficient adult-like intellectual, social and emotional capabilities to have an adult-like understanding of the significance of his or her conduct, including its wrongfulness and its consequences for the youth, the victim, and others" turned, not insignificantly, on the court's recognition that the legislature had drawn that provision from the criteria appended to the Kent decision. J. C. N.-V. , 359 Or. at 597, 380 P.3d 248. Although the court ultimately concluded that *626 the waiver analysis under ORS 419C.349(3) is more focused than it is under the parallel Kent criteria from which the legislature drew ORS 419C.349(3), the court characterized the statute as a "commitment to the kind of inquiry contemplated by the Kent criterion." Id. at 585, 380 P.3d 248.
Here, the waiver study submitted to the juvenile court in connection with petitioner's stipulated waiver states affirmatively that it used the Kent criteria to evaluate the waiver under ORS 419C.349. If petitioner believed that those criteria were being misapplied, and that the court was not properly conducting the inquiry in a way that was consistent with the legislature's "commitment to the kind of inquiry contemplated by the Kent criterion," petitioner reasonably could have raised the issue at that time and, certainly, by the time of his first post-conviction proceeding. The waiver study put at issue the application of the Kent criteria, making it reasonably possible for petitioner to raise any issues regarding the juvenile court's inquiry under those criteria long before the Supreme Court's decision in J. C. N.-V. ; in fact, given that the waiver study was based on the Kent criteria, it is not wholly implausible to think that, but for petitioner's stipulation to the waiver into adult court, the court would have conducted "the kind of inquiry contemplated by the Kent criterion" that the J. C. N.-V. court held is required. Beyond that, similar to the case in Verduzco , petitioner was litigating his first post-conviction proceeding concurrently with the juvenile court proceedings and a portion of the appellate proceedings in J. C. N.-V. , another fact that tends to suggest that petitioner's J. C. N.-V.
*511 claim is one that reasonably could have been raised in his original post-conviction proceeding.
Under those circumstances, petitioner has not adduced facts that would permit the conclusion that his J. C. N.-V. claim is one that falls within the statutory escape clauses of ORS 138.510 and ORS 138.550. On the contrary, the undisputed facts tend to suggest that petitioner's claim is one that reasonably could have been raised at the time of the underlying juvenile court proceedings.
For those reasons, the post-conviction court did not err when it dismissed the petition as untimely and successive.
*627 We reject without discussion petitioner's remaining assignments of error.
Affirmed.

ORS 419C.349(3) explains that one of the findings a juvenile court must make to waive a juvenile into adult court is that "[t]he youth at the time of the alleged offense was of sufficient sophistication and maturity to appreciate the nature and quality of the conduct involved."

The appeal was dismissed for lack of jurisdiction.

Petitioner also alleged that, in the light of J. C. N.-V. , his criminal trial counsel rendered constitutionally inadequate and ineffective assistance of counsel in violation of Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. In his brief on appeal, he has abandoned that claim, noting that he "is convinced that this claim is meritless and will not pursue it."

ORS 138.510(3) provides, in pertinent part, that "[a] petition pursuant to ORS 138.510 to 138.680 must be filed within two years of the [date the petitioner's conviction becomes final], unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition."

ORS 138.550(3) provides, in pertinent part:
"All grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 to 138.680 must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition."

Amici also have developed several additional arguments as to why we should reverse, including (1) that petitioner's juvenile status should bear on the question whether he reasonably could have raised a claim for purposes of the escape clause, notwithstanding the fact that he was represented by counsel in his direct criminal proceedings and first post-conviction case; and (2) that Article I, section 20, requires that the limitations period under ORS 138.510 be tolled for juveniles, in view of the tolling granted to children within the juvenile court's jurisdiction under ORS 419C.615. We do not consider those contentions because no party developed them below and they are unpreserved for that reason.