Argued and submitted August 13, reversed December 19, 2001

## ANA MARIA BENITEZ-CHACON,
*Respondent,*

*v.*

## STATE OF OREGON,
*Appellant.*

## C99-1251-CV; A111365

37 P3d 1035

Kaye E. McDonald, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Brian Patrick Conry argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Linder* and Wollheim, Judges.

LINDER, J.

_____
* Linder, J., *vice* Warren, S. J.

## LINDER, J.

The state appeals a judgment in a post-conviction case granting petitioner post-conviction relief on the ground that petitioner's trial counsel failed to inform her fully and adequately of the immigration consequences of a no contest plea. On appeal, the state challenges the post-conviction court's denial of its motion to dismiss the petition as time barred, as well as the post-conviction court's determination that petitioner was entitled to relief on the merits of the petition. Because we conclude that the petition was time barred, we reverse without reaching the petition's merits.

Petitioner is a native and citizen of Mexico who was admitted to the United States as a lawful permanent resident. As a result of a search of petitioner's residence in 1992, she was charged with six crimes. Pursuant to plea negotiations, in exchange for dismissal of the remaining charges, she pleaded no contest to one charge of delivery of a controlled substance as part of a commercial drug offense. Her attorney believed that the no contest plea was in her interest because the evidence against petitioner on at least three of the charges was overwhelming, and the attorney thought that a conviction on only the delivery charge might increase the odds that petitioner would be sentenced to optional probation or be given a downward departure. In advising petitioner, the attorney told her that a conviction on the delivery charge might subject her to deportation, and he also went over a paragraph of the written plea petition that effectively so advised her. Petitioner's trial attorney did not give her more specific immigration advice or otherwise research the precise consequences that might flow under the applicable immigration laws and rules. Several years after petitioner's conviction, an immigration judge ordered petitioner's deportation. Petitioner claimed in her post-conviction petition that she would not have pleaded no contest had she been advised more fully and specifically of the likelihood of deportation in her particular circumstances.

In its motion to dismiss the petition, the state argued that, when petitioner's conviction became final, ORS 138.510(2) (1991) provided a 120-day statute of limitations

for post-conviction relief and that petitioner did not file her petition within that time.[1] The state argued, alternatively, that, even if the petition was subject to a 1993 amendment expanding the statute of limitations to two years (*see* ORS 138.510(2) (1993)), the petition remained untimely because it was filed well beyond that time. The state recognized that petitioner could file her petition if her claim fit within the so-called "escape clause" contained in ORS 138.510(3), which permits a petition to be filed after the statutory time period if it asserts a ground for relief that could not have reasonably been raised timely. The state urged, however, that petitioner's claim that she was not adequately advised of the immigration consequences of her conviction did not qualify as such a ground.

■　　　In response, petitioner in essence asserted that the statute of limitations in ORS 138.510(2) (1991) encompassed a "discovery" rule: "[t]he very earliest time a statute of limitations can be construed to begin to run is when the injury that occurred is first discovered by the injured party." Petitioner asserted that she did not discover her injury from her attorney's allegedly inadequate advice until October 29, 1998, when an immigration judge ordered her to be deported. She filed her petition for post-conviction relief on November 2, 1999, less than two years after that order. In petitioner's view, the time for filing her petition did not begin to run until her injury was discovered, at which point the amended two-year statute of limitation was in effect. Thus, petitioner asserted, her petition was timely. The post-conviction court denied the state's motion to dismiss without explanation.

■　　　We agree with the state that *Bartz v. State of Oregon*, 314 Or 353, 356-60, 839 P2d 217 (1992), is largely controlling and that, under *Bartz*, the petition was time barred. In *Bartz*, the petitioner was subject to the 120-day statute of limitations in ORS 138.510(2) (1989), but failed to file his petition until 145 days after his conviction became final. 314 Or at 356. The petitioner asserted that he was entitled to file after the limitations period because the trial court had not advised him of a possible statutory defense to the charge and "he did not learn of the defense within 120 days after his conviction

---

[1] Petitioner's conviction became final on July 13, 1992.

became final." *Id.* at 357. The petitioner urged that, without his attorney's advice as to the statutory defense, he could not reasonably have known of it within the 120-day statutory period and, thus, he was entitled to the benefit of the statutory "escape clause." *Id.*

The Supreme Court disagreed. After examining the statute's text and its legislative history, the court concluded that the exception for filing a late petition is to be narrowly construed and limited to "extraordinary circumstances." *Id.* at 358-59. With respect to the petitioner's claim in *Bartz*, the court concluded that it did not rise to that level, reasoning:

> "Given the specific nature of Bartz's claim, the issue becomes whether the extant statutes pertaining to a particular criminal offense constitute information that is reasonably available to a defendant convicted of that offense. *It is a basic assumption of the legal system that the ordinary means by which the legislature publishes and makes available its enactments are sufficient to inform persons of statutes that are relevant to them.* * * * Accordingly, we hold that the relevant statutes were reasonably available to Bartz when his conviction became final. The failure of Bartz's counsel to advise him of all available statutory defenses thus is not a 'ground[ ] for relief * * * which could not reasonably have been raised' timely."

314 Or at 359-60 (emphasis added; citation omitted).

Relying on the analysis in *Bartz*, we reached the same conclusion in *Brown v. Baldwin*, 131 Or App 356, 361, 885 P2d 707 (1994), *rev den* 320 Or 507 (1995). There, the petitioner claimed that he could not reasonably have raised his post-conviction claim within the statute of limitations because his attorney had affirmatively advised him that he should wait until he had served about 36 months of his sentence before seeking post-conviction relief. In rejecting his argument that he could avail himself of the "escape clause," we refused to distinguish between an attorney's passive failure to inform a defendant of particular legal information and an attorney's active misrepresentation concerning the law:

> "We recognize that counsel's alleged active misrepresentation in this case differed from the passive failure to inform in *Bartz*. That fact, however, is irrelevant to the

*Bartz* analysis. *Bartz* makes it clear that the applicability of the escape clause turns on whether the information *existed* or *was reasonably available to the petitioner*, and not on whether the petitioner's failure to seek the information was reasonable."

*Brown*, 131 Or App at 361 (emphasis in original).

Under *Bartz* and *Brown*, petitioner's claim does not fall within the exception to the statute of limitations period applicable to post-conviction petitions. Petitioner's complaint here is that her attorney failed to adequately inform her of the likely effects of the immigration laws in effect at the time of her conviction. If the petitioner in *Bartz* was presumed to know the law based on the public nature of legislative enactments, so must petitioner in this case be presumed to have had knowledge of the relevant immigration statutes and rules. As we said in *Brown*, the exception under ORS 138.510(2) (1991) depends on whether the information existed or was reasonably available to petitioner to discover her attorney's alleged inadequate advice, not on whether petitioner reasonably was unaware of it. Here, the immigration laws and rules were available, even if petitioner chose not to determine what they actually were. Petitioner's claim here does not differ meaningfully from the petitioner's claim in *Bartz*. As in *Bartz*, the petition is time barred. *See also Long v. Armenakis*, 166 Or App 94, 103, 999 P2d 461, *rev den* 330 Or 361 (2000) (exception to statute of limitations does not apply to a person who forgoes legal representation or advice and remains, by his own choice, ignorant of possible grounds for seeking post-conviction relief).

On appeal, as below, petitioner's only real response to that analysis is to assert that the statute of limitations in ORS 138.510 does not begin to run until a petitioner discovers his or her "injury" due to her attorney's allegedly inadequate advice. If petitioner were correct in that regard, and if she were further correct that the applicable limitation period was two years, rather than 120 days, then petitioner's filing would have been timely.

But we find no support for petitioner's proposed "discovery rule" in the text of the applicable statutes. As the Supreme Court has recently reemphasized, a discovery rule

" 'cannot be assumed, but must be found in the statute of limitations itself.' " *Gladhart v. Oregon Vineyard Supply Co.*, 332 Or 226, 230, 26 P3d 817 (2001) (quoting *Huff v. Great Western Seed Co.*, 322 Or 457, 462, 909 P2d 858 (1996)). Whether a particular statute contains a discovery rule turns on the legislature's intent. *Id.* As for other issues that turn on statutory interpretation, the legislature's intent is determined by following the interpretive methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993).

Here, the text of the pertinent statute could not be more plain. ORS 138.510 (1991), which was in effect at the time of petitioner's conviction, expressly provides that a person convicted of a crime may file a petition for post-conviction relief within 120 days "following" either of two dates. If no appeal is taken, the petition must be filed within 120 days following "the date the judgment or order on the conviction was entered in the register." ORS 138.510(2)(a) (1991). If an appeal is taken, the petition must be filed within 120 days of the date that "the appeal is final in the Oregon appellate courts." ORS 138.510(2)(b) (1991).[2] When the legislature amended the statute in 1993, it did not change the language specifying the dates that trigger the running of the limitations period. Rather, it merely changed the time period to allow the petition to be filed within two years following those same dates. *See* Or Laws 1993, ch 517, § 1. Thus, the legislature unambiguously has provided that the applicable limitations period—whether it is 120 days or two years—runs from the date that the conviction is final, not from the date that a convicted person discovers that he or she has been "injured"

---

[2] ORS 138.510 (1991) provided, in pertinent part:

"(1) Except as otherwise provided in ORS 138.540, any person convicted of a crime under the laws of this state may file a petition for post-conviction relief pursuant to ORS 138.510 to 138.680.

"(2) A petition pursuant to ORS 138.510 to 138.680 must be filed within 120 days of the following, unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition:

"(a) If no appeal is taken, the date the judgment or order on the conviction was entered in the register.

"(b) If an appeal is taken, the date the appeal is final in the Oregon appellate courts."

by counsel's ineffective assistance. By its plain text, the statute does not permit any other interpretation.

■    The only exception under both versions of the statute is the one earlier discussed—the so-called "escape clause," which permits a petition to be filed after the specified limitation period if the petition asserts grounds for relief that "could not reasonably have been raised in the original or amended petition." ORS 138.510(2) (1991). Although that exception may encompass a form of a "discovery rule," it is not one as broad as petitioner seeks. Rather, it permits a late petition only on grounds that " 'could conceivably have been made but could not reasonably have been expected,' " such as a newly announced constitutional principle that was not only unsettled at the time the petition had to be filed, but could not reasonably have been anticipated. *See Long,* 166 Or App at 101. As already discussed, the exception does not encompass a claim based on a petitioner's lack of actual awareness of current statutes or laws. *See Bartz,* 314 Or at 359-60; *Long,* 166 Or App at 102; *Brown,* 131 Or App at 361.

Consequently, we need not decide whether petitioner's petition was subject to a 120-day or a two-year time limitation period. Either way, the petition was time barred because petitioner did not file it until more than seven years after her conviction became final. Moreover, petitioner's late filing was not subject to the exception in ORS 138.510(2) (1991) for claims that could not reasonably have been raised within the applicable time period. Finally, because the statute contains no "discovery rule," the filing was not timely on the theory that petitioner did not "discover" that she would be deported due to her conviction until 1998, when an immigration judge ordered her deportation. For all of those reasons, the petition for post-conviction relief was untimely, and the post-conviction court erred in denying the state's motion to dismiss it.

Reversed.